JONES and another vs. THE ESTATE OF KEEP.

That provision of the act of Congress approved July 1st, 1862 (12 U. S. Statutes at Large, p. 483), which requires stamps to be affixed to "writs or other original process by which any suit is commenced in a court of record," is unconstitutional and void; such writs or other process being essential means by which the state governments exercise their functions, and as such exempt from taxation. DOWNER, J., dissents.

ERROR to the Circuit Court for *Rock* County.

This action was brought to reverse an order of said court dismissing an appeal by the plaintiffs in February, 1864, from the decision and report of commissioners to examine and adjust claims against the estate of John M. Keep; said order of dismissal having been made on the ground that no revenue stamp had been affixed to the appeal papers, as required by the act of Congress approved July 1st, 1862.

*Matt. H. Carpenter*, for plaintiffs in error, argued that the act of Congress does not in express terms apply to process in state courts, and should not be extended, by construction, into conflict with state sovereignty. A government passing a law in regard to "suits in courts of record" must be deemed to have intended its own courts of record, unless the contrary manifestly appears. By the proviso as to justices of the peace, only officers of that kind in the territories may have been intended. 2. There is in this record no "*writ* or other original process;" nor was the appeal to the circuit court the *commencement* of a suit. 3. The act, if intended to apply to writs and process issued in a state court in the due administration of justice, is unconstitutional. To this point counsel cited and commented at length upon *McCulloch v. Maryland*, 4 Wheat., 316; *Osborn v. United States Bank*, 9 id., 738; *Dobbins v. Com-m'rs of Erie Co.*, 16 Pet., 435; *Bank of Commerce v. N. Y. City*, 2 Black, 620.

*J. A. Sleeper*, for respondent, contended that the act of Congress required a stamp on the appeal. (1.) "An appeal

or instrument by which a suit is transferred from a justice of the peace to a superior court, is an original process, and subject to stamp duty as such." Boutwell's Direct and Excise Tax System U. S., p. 353, No. 311. In reference to this very case the commissioner writes: "The course of proceedings, as stated by you, is precisely similar to that in various other states. The county court, as a court of probate, appoints commissioners to examine and allow the claims against an estate; the report of such commissioners is made to that court, and, unless further proceedings are had, is final. But either party may claim an appeal to the circuit court; and it has been uniformly held, in this office, that such an appeal is subject to stamp duty as an original process. The same rule is held to apply to all appeals from an inferior court to a court of record." (2.) This appeal is a suit *prosecuted* in a court of record. *Weston v. City Council of Charleston*, 2 Pet., 449. It was also *commenced* in the circuit court. No such suit was pending in the county court; and the commissioners did not constitute a court. The *original process* by which such a suit is commenced in the circuit court, is the proceeding pointed out by the statute. By a similar process suits against a county board of supervisors are commenced on claims rejected by them.—Counsel also argued that the provision declaring such instruments invalid without a stamp affixed, was within the constitutional power of Congress.

*By the Court*, COLE, J. The conclusion at which the majority of the court have arrived upon the main question in this case, will render it unnecessary to notice several subordinate points discussed by counsel on the argument. The important and interesting question raised upon the record, is that which relates to the validity of that provision of the internal revenue law which requires that writs and other original processes by which suits are commenced in the state courts, should be stamped, or should otherwise be deemed invalid and of no ef-

Jones et al. vs. The Estate of Keep.

fect. This suit was brought to the circuit court by appeal, un-der our statute, from the decision and report of commissioners appointed to examine claims against the estate of John M. Keep, disallowing a claim of the appellants against said estate. The circuit court, on motion, dismissed the appeal, because it appeared from an inspection of the return made by the county court, that no stamp had been affixed to the papers constitut-ing the appeal, as required by the act of Congress. It will therefore be seen that the question fairly raised upon the record is this : Is it competent for Congress, under the constitution of the United States, to impose a stamp duty upon writs and pro-ceedings in the state courts, or are such instruments, from their very nature, being the essential and indispensable means by which the state governments exercise their proper functions, necessarily exempt from such taxation ? The question is one of delicacy and importance, as all must be which involve a consideration of conflicting powers between the state and gen-eral government.

The argument of the counsel for the respondent, by which the right of Congress to tax judicial proceedings in state courts is attempted to be maintained, is very able and elaborate, and only a brief outline of it can be given in this opinion. The reasoning by which this exercise of power on the part of Con-gress is sustained, seems to rest on the following propositions: The constitution of the United States and all laws passed in pursuance thereof, are the supreme law of the land, and act directly upon the people by means of powers derived directly from the people. Certain high sovereign powers have been delegated to the government of the Union, which are necessa-rily supreme and paramount within the sphere of their appro-priate limits. The general government has the exclusive charge and control of the external relations of the country, and can alone regulate the intercourse of the nation with for-eign states. It has the exclusive right to declare war, make peace, raise and support armies and navies. It can organize

and call forth the entire military force of the states to repel invasions, suppress insurrections, or prosecute an aggressive war. It is intrusted with the duty of providing for the common defense and general welfare, and securing to the people of the respective states a republican form of government; and in order to enable the general government to execute these and other high sovereign powers delegated to it, Congress, by express grants in the constitution, has an independent and uncontrollable authority to raise a revenue to meet the wants of the government, can lay and collect taxes, duties, imposts, excises, and reach every subject of taxation. The power of Congress therefore to lay and collect taxes, duties, imposts and excises is unrestricted—more extensive than that of the state legislatures, free from all control on the part of the state governments—and has no bounds other than the exigencies of the nation and the resources of the entire country.

The soundness of this general reasoning may be fully admitted, and still it does not establish the power of Congress to impose a tax upon the writs and processes of state courts. The argument must be pushed still further, and it must be shown that Congress has not only an unlimited power to tax the property of the country and other subjects to which the power of taxation is applicable, but that it can directly tax the means employed by the states in the exercise of their governmental functions. Is there then no limitation upon the power of taxation, which all concede is vested in the general government, and may it be applied to all subjects within the discretion of Congress?

In the discussion of this question we must keep constantly in view the peculiar character and structure of our complex system of government. Under this system, the powers of government are divided, some high sovereign powers being delegated to the general government to be exercised for the protection and welfare of the whole country, while other high sovereign powers, relating to the local administration and bus-

iness of society, are reserved to the states or the people of the states.   Or, in the language of a great judge, which is familiar to every constitutional lawyer :   " In America the powers of sovereignty are divided between the government of the Union and those of the states.   They are each sovereign with respect to the objects committed to it, and neither sovereign with respect to the objects committed to the other."   This just and comprehensive statement of the true relations of the states and general government, would seem to be sufficient to solve the question above suggested.   "The general government, within its sphere of action, and the state governments, within their spheres of action, are equally independent, and neither can constitutionally interfere with the other in its proper functions."   Any interference on the part of the states with the action of the general government in executing the powers granted to it, is an unjustifiable encroachment ; any interference on the part of the general government with the action of the states while executing their powers, is equally an unjustifiable usurpation.   An assertion of power on the part of the states which in its exercise necessarily impedes or hinders the general government in its constitutional action, is therefore unwarranted.   And for a like reason, an assertion of power on the part of the general government which in its exercise necessarily impedes and hinders the operation of the state governments, while acting within the scope of their powers, is wholly unauthorized.   From this it follows, that there must be some limit to the taxing power on the part of the states and that of the general government.   Such limitations must necessarily exist ; for an unlimited power to tax on the part of one, is incompatible with the existence of the other.   For if an unlimited power of taxation on the part of Congress be established—if it may require a writ of a state court to be stamped— it may likewise say that an act of the state legislature, a commission or pardon issued by the governor, shall have no effect unless stamped.   Congress may tax any and all the means

employed by the state governments in the execution of their powers.   The assertion of such a power is hostile to the states and repugnant to the fundamental principles and maxims of our system of government.

We are not aware that the question as to the validity of this provision of the revenue law has ever been passed upon by the supreme court of the United States, although the principle, we think, has been decided in several cases.

In the case of *McCulloch v. The State of Maryland*, 4 Wheaton, 316, it was decided that the state governments have no right to tax any of the constitutional means employed by the government of the Union to execute its constitutional powers, nor to retard, impede, burden or in any manner control the operations of the constitutional laws enacted by congress to carry into effect the powers vested in the national government. Chief Justice MARSHALL, in delivering the opinion of the court, uses the following language, while speaking of the power of taxation : " It is obvious, that it [the power of taxation] is an incident of sovereignty, and is co-extensive with that to which it is an incident. All subjects over which the sovereign power of a state extends, are objects of taxation; but those over which it does not extend, are, upon the soundest principles, exempt from taxation.   This proposition may almost be pronounced self-evident.   The sovereignty of a state extends to everything which exists by its own authority, or is introduced by its permission; but does it extend to those means which are employed by Congress to carry into execution powers conferred on that body by the people of the United States ? We think it demonstrable that it does not." P. 429.   Again he says: " That the power to tax involves the power to destroy ; that the power to destroy may defeat and render useless the power to create ; that there is a plain repugnance in conferring on one government a power to control the constitutional measures of another, which other, with respect to those very measures, is declared to be supreme over that which exerts the

control, are propositions not to be denied." P. 431. In further elaboration of the point, he says : " If the states may tax one instrument employed by the government in the execution of its powers, they may tax any and every other instrument. They may tax the mail ; they may tax the mint ; they may tax patent rights ; they may tax the papers of the custom house ; they *may tax judicial process ;* they may tax all the means employed by the government, to excess, which would defeat all the ends of government. This was not intended by the American people." P. 432.

We have but to apply the principle and reasons of this decision to the question under consideration, to show, beyond all doubt or controversy, that Congress cannot impose a stamp duty upon the process of a state court, since such process is one of the indispensable means employed by the state government in the execution of its powers.

According to C. J. MARSHALL, the power to tax implies the power to carry such taxation to the extent of absolute prohibition and destruction. And inasmuch as the states are sovereign in respect to the matters committed to them, Congress cannot, by taxation or otherwise, retard, burden or control their operations within the field of their duty, nor "impose a specific tax of any kind upon any of the indispensable governmental functions of the states." Judge REDFIELD, in note to case of *Warren v. Paul,* Jan'y No., 1865, Law Register, p. 165. See the very clear and satisfactory decision of the Supreme Court of Indiana in *Warren v. Paul,* referred to above, and also reported in 22 Ind., 276, where the provision of the internal revenue law requiring writs in state courts to be stamped, is held to be not within the sphere of the legislative powers of the general government, and therefore void. The case of *McCulloch v. Maryland* was again considered and affirmed in *Osborn et al. v. U. S. Bank,* 9 Wheaton, 738, where C. J. MARSHALL again delivers the opinion, reiterating the principle that it is not competent for a state to tax an instrument which is

necessary and proper for carrying into effect the powers vested in the government of the United States. And if the premises upon which the argument of Chief Justice MARSHALL rests, be conceded, the result at which he arrives is most indubitably correct.

In *Weston et al. v. The City Council of Charleston,* 2 Peters, 449, an analogous question was presented and decided. In that case it was held that a tax imposed by a law of any state, or under the authority of such a law, on stock issued for loans made to the United States, is unconstitutional. The doctrine of this case is affirmed in the recent one of *Bank of Commerce v. New York City,* 2 Black, 620, where a state tax on the loans of the general government is decided to be a restriction upon the constitutional power of the United States to borrow money, and that if the states had such a right, being in its nature unlimited, it might be so used as to defeat the power of the general government altogether. Mr. Justice NELSON closes his opinion in this case as follows: "Their powers (the powers of the state and general government) are so intimately blended and connected that it is impossible to define and fix the limit of the one without at the same time that of the other, in respect to any one of the great departments of government. When the limit is ascertained and fixed, all perplexity and confusion disappear. Each is sovereign and independent in its sphere of action, and exempt from interference or control of the other, either in the means employed or functions exercised; and influenced by a public and patriotic spirit on both sides, a conflict of authority need not occur or be feared." In *Dobbins v. The Commissioners of Erie Co.,* 16 Peters, 435, the principle of the immunity of the means and agents employed by the general government from state taxation was carried to a still greater length. In that case, a captain of the United States revenue cutter, on the Erie Station in Pennsylvania, was rated and assessed for county taxes as an officer of the United States, for his office, under a law of the state, which required

all offices and posts of profit to be rated and assessed.   The supreme court of Pennsylvania held that under this law the pay and emoluments of an officer in the revenue service of the United States were subjects of taxation for county purposes where such officer resided.   *Commissioners v. Dobbins*, 7 Watts, 513.   But the supreme court of the United States declared such an enactment repugnant to the constitution and laws of the United States.   Mr. Justice WAYNE, after stating that it was admitted that the vessel commanded by the officer, the instruments used to navigate her, and the guns on board to enforce obedience to the law, could not be taxed by the state authorities, because they were all means used by the general government in executing its powers, adds :   " Is not the officer more so, who gives use and efficacy to the whole ?   Is not compensation the means by which his services are procured and retained ?   It is true, it becomes his when he has earned it.   If it can be taxed by a state as compensation, will not Congress have to graduate its amount with reference to its reduction by the tax ?   Could Congress use an uncontrolled discretion in fixing the amount of compensation, as it would do without the interference of such a tax ?   The execution of a national power by way of compensation to officers, can in no way be subordinate to the action of the state legislatures upon the same subject."   P. 448.

In view of the principles and reasoning of all these cases, it seems to the majority impossible to say that there are no exceptions out of the taxing power of Congress, and that a writ or other process by which a suit is commenced in a state court is not an exception.   For a tax upon such a writ is manifestly a tax upon a necessary means used by the judicial department of the state to administer justice between its citizens.   If it can be imposed upon a writ in a civil suit, it may be upon a warrant in a criminal case *ad libitum*, and the whole judicial power of the state practically destroyed.   Can it be that the high sovereign powers of the states thus exist at the suffer-

ance of Congress? That the judicial tribunals of the states may be closed on account of the burdens imposed upon the administration of justice? "Taxation, it is said; does not necessarily and unavoidably destroy. To carry it to the excess of destruction would be an abuse, to presume which would banish that confidence which is essential to all government. But is this a case of confidence? Would the people of any one state trust those of another with a power to control the most insignificant operations of their state government? We know they would not." To this most emphatic language of Chief Justice MARSHALL, the further remark may safely be added, that the people of the states would have been as little disposed to delegate to the general government a power which might be exerted to the destruction of the state judiciary, by annexing such conditions to the administration of justice as will amount to a virtual prohibition. " The principal rights and duties which flow from our civil and domestic relations, fall within the control, and we might almost say the exclusive cognizance, of the state governments. We look essentially to the state courts for protection to all these momentous interests. They touch, in their operation, every chord of human sympathy, and control our best destinies. It is their province to reward and to punish. Their blessings and their terrors will accompany us to the fireside, and be in constant activity before the public eye." Chancellor KENT—Commentaries, Lecture 19. We must therefore conclude that the right on the part of Congress to tax the process of state courts is utterly incompatible with the independence and existence of such courts, and that such instruments, from the necessity of the case, must be exempt from all such taxation.

It has been suggested that this tax upon state process might be sustained on the ground that it was really a tax upon the party appealing to the court for redress. He is undoubtedly the person most immediately interested in the judicial proceedings, and the tax is paid by him. But this circumstance does not

render the tax any the less obnoxious to the objection taken to it. It is still a direct tax upon the means employed by the state courts to administer justice. A tax by the state upon the judicial proceedings of the federal courts, would in the same way be paid by the person who brought suit in those courts. Could the state impose such a tax, because it would be paid by the suitor in the federal court? The supreme court of the United States has in effect said it could not, for the reasons already stated. A writ or process issued by one of the courts of this state, is the mandate of the state. It is the state's writ, going in conformity with the constitutional requirement, to bring parties before the court to have their rights adjudicated and declared. And although the party who is restored to or maintained in his rights, or who obtains redress for injury to his reputation or property, is perhaps the most directly interested in the matter in litigation, yet the whole state is virtually concerned in the due administration of justice. Hence, in every well regulated government, tribunals are established to take cognizance of all disputes which may arise between the citizens. These tribunals exist not alone for the convenience of the parties appealing to them, but because they are essential agencies in insuring domestic tranquillity and good order. No state or nation can exist without some means or agencies being provided for the administration of justice between its citizens. This proposition is too plain to require argument to support it. It is therefore the judicial faculty of the state which is appealed to and put in operation when a suit is commenced. And a tax upon the writ is a direct tax and burden upon the means the court employs to bring parties before it and exercise its functions. Suppose the legislature enacts a private law, or the governor grants a pardon. Are not both acts exertions of the legislative and executive power of the state? Most certainly they are, although in either case an individual is most immediately benefitted.

Some remarks were made by counsel on both sides in ref-

erence to the terrible civil conflict going on in the country, and the vast powers and responsibilities which such a state of public affairs devolves upon the general government. These observations do not appear to have any particular bearing, however, upon the case before us. The question is, has Congress exceeded its constitutional limits in passing the provision under consideration? This question is to be determined by an examination of the powers contained in the federal constitution. Even if this question is decided adversely to the general government, it does not follow that the people will not, as heretofore, be ready to make any sacrifices for their country, and that the loyal states will not continue to furnish the general government all the men and all the treasure demanded by its necessities. They have not thus far been indifferent to the calls of the national government, but have furnished money and troops with a prodigality and promptness at once the wonder and admiration of the world. No patriotic citizen, furthermore, will desire to abate one tittle of the powers granted the general government. But while sustaining them in their full measure, he will labor as sedulously to maintain those powers reserved to the states in all their integrity. Both governments are to be maintained in their full constitutional action. For it is under this well balanced system of state and national governments, that the power, spirit and genius of a great people have been so signally manifested ; and under the same system the good order, tranquillity,permanent prosperity and glory of the whole country, will, in the future, be most certainly secured.

The order of the circuit court dismissing the appeal is therefore reversed, and the cause remanded for further proceedings.

Downer, J. Taking for granted that the United States law requiring writs or process by which suits are commenced in courts of record, to be stamped, includes suits

in state courts, and those removed to or commenced by appeal in courts of record, as the one before us, the only question I shall consider is, whether the law, so far as it relates to process in state courts, is constitutional.

Subdivision one of section eight, Constitution of the United States, grants to Congress the power " to lay and collect taxes, duties, imposts and excises," and further provides that " duties, imposts and excises shall be uniform throughout the United States." Subdivision four of section nine provides that " no capitation or other direct tax shall be laid, unless in proportion to the census or enumeration hereinbefore directed to be taken." Is here authority sufficient to authorize the law requiring writs of state courts to be stamped ?

The supreme court of the United States have decided that the states cannot tax directly or indirectly the government of the United States or their powers, or the instruments they may use as necessary and proper means to execute their powers, and that a state cannot tax its own citizens for stocks of the United States owned by them. *McCulloch v. State of Maryland*, 4 Wheaton, 316 ; 2 Pet., 449 ; 16 Pet., 435 ; 2 Black, 620. The same course of reasoning, it is said, by which the United States supreme court arrived at this conclusion, would lead to the conclusion that the United States could not directly or indirectly tax the states, their powers or the instruments they may use as necessary and proper means to execute their powers. Each is sovereign in its own peculiar sphere. Neither has a right to infringe upon, interfere with, or in any way impair the exercise of the sovereign rights of the other. One of the most sacred of the rights of each state is that to maintain courts and administer justice between its own citizens. Does the stamp tax in any way interfere with or impair this right of the state ? It is not a tax upon the state, nor upon the powers of the state, nor upon the instrumentalities it uses as a necessary and proper means to execute its sovereign power. It takes not a mill from the treasury of the state, nor does

it directly or indirectly prevent the state from receiving from any and every source whatever, every dollar it would otherwise receive. It is unlike the state tax upon the stocks or other instrumentalities the United States use in raising money to sustain armies and carry on the government in peace or war. A tax on those instrumentalities by each of the states would depreciate the price of them in the market, and embarrass, and might, when in time of war its ability is taxed to the utmost, bankrupt the government. Chief Justice MARSHALL rightly said that a power to tax in such a case is a power to destroy. If each separate state could tax the stocks or bonds of the United States, it would be equivalent to taxing the powers and resources of the general government, by which it wages foreign wars and suppresses rebellions, maintains its own independence and its very existence.

The law of Wisconsin provides that on each civil suit commenced in a court of record, the plaintiff shall pay a tax of one dollar. It has never been supposed that the state, by imposing this tax, taxed itself, or taxed its own powers, or taxed the instrumentalities it used as a necessary and proper means to carry into effect its sovereign powers. If the tax had been imposed on suits prosecuted by and in the name of the state, then there would have been force in the reasoning that the United States were taxing the state or its powers, but such suits are exempt from the tax. The idea that underlies both the state and United States law imposing a tax on suits or process, is that the *individual suitor* is taxed. It is a tax paid in the first instance by the plaintiff in the action, but in the end, if the suit is rightfully commenced and prosecuted, by the dilatory, defaulting or wrong-doing defendant. It is a tax *on the person who caused the law suit*, who is in the wrong, and against whom the aid of the state is invoked.

How does the law requiring process to be stamped in any just sense impose a tax or duty on the instrument used by the state in administering justice? The summons by which suits

are commenced in this state does not even run in the name of the state. But if it did, it would be then, as it is now, only an instrument devised by the state for the use of any plaintiff in any civil action. The state gives to the suitor the privilege of commencing the suit when he pleases, and of using this instrument. He may use it or not: it is entirely discretionary with him. If he does use it, it is to gain some private advantage. He is the only one directly interested,—the only one having any pecuniary interest in the commencement of the suit. The state is interested in having justice so administered that all its citizens may be protected in their property and persons. But it pays no tax directly or indirectly. The stamp tax, instead of being imposed upon the process, is imposed upon the individual using it. It differs not in principle from the stamp tax on a deed of real estate. The state law provides how and by what instruments real estate may be conveyed ; the stamp law provides that these instruments shall be stamped or they shall be void. The stamp duty is a tax upon the grantor in the deed, not upon the state or the instruments it has devised or authorized. And the same is true of the stamps required upon many other instruments. If the process stamp tax is void, it is obvious the law requiring stamps is in many other respects also void.

But this course of reasoning does not fully answer the real question. Has the power to impose this tax been delegated to the United States ? If it has, it is no legal objection to its exercise, that it indirectly affects the states or the instruments they use in executing their powers. If the power is clearly granted to Congress, then it is not one of the powers reserved to the states; and Congress does not encroach upon any of their rights by its exercise. It is clear that all the great powers which give us character as a nation among the nations of the earth, have been delegated by the people to the United States ; such as the powers to raise and support armies, declare war, regulate commerce and coin money. Incident to the

powers expressly granted, are the means necessary to the end in view. And we have seen that the supreme court of the United States held that a state could not even tax a citizen of that state on the bonds of the United States owned by him, because it might unfavorably affect their credit, and consequently their ability successfully to ride out the storms which sooner or later must sweep over this as over other nations.

Among the powers granted to Congress, is the power to lay and collect taxes, direct and indirect, duties, imposts and ex- cises. This is a power without which all the other powers grant- ed would be of no avail—a power without which no nation can exist. No restrictions should be imposed by the courts upon this power but what are clearly in the *constitution.* The law requiring a stamp on process or other instruments, imposes an *indirect* tax or duty. Congress has also imposed an income tax, which, among other things, taxes income received by a citizen or tax payer from the stocks of the respective states owned by him. Is this a valid tax? Certainly not, according to the reasoning by which the invalidity of the process stamp tax is proved, or attempted to be. That is invalid, it is said, be- cause it is a tax upon the instruments the state uses to exe- cute its powers, and " a power to tax is a power to destroy." The stocks of each state are proper instruments, which it uses to execute its powers; and it is clear that they cannot be taxed by the United States nor the individual who holds them be taxed for income derived from them, if the United States has no more right or power to tax state stocks than each state has to tax the stocks of the United States. But by parity of rea- son, it is said, the decision of the supreme court of the United States, that the states cannot tax the stocks of the United States, is conclusive that Congress cannot tax directly or indi- rectly the instruments any one of the states uses as a necessary or proper means to execute its powers; that is, it cannot tax the individual who owns or uses these instruments for them as for other property, or as a condition precedent to their use.

*Non sequitur.* The people of the United States have granted to Congress the power to tax the persons and property of the citizens of the states, and the states have only such powers as the people have not granted to the United States and as are not prohibited to the states. The bonds made by the states and sold in the market become the property of the citizens of the states; and being such property, the citizen owning them is liable to be taxed for them by the United States, the same as for any other property, notwithstanding it may incidentally affect the credit of the state that made them. The power granted to Congress to tax the property of citizens is general. There is not reserved to the states the right to exempt their bonds, when owned by individuals, from taxation by the United States, or those issued by one state from taxation by another, when owned by citizens of the latter. If there is such a reservation, it must be implied from the necessity of the case—from the inevitable conflict of powers of the general and state governments. Is there any such conflict? Is it necessary that the individual states should have any such reserved power, right or privilege? There is certainly not the same reason or necessity for exempting state stocks from taxation by the United States, that there is for exempting United States stocks from taxation by each of the states.

Taxes imposed by the United States must be uniform throughout all the states, and will be for the benefit of *all* the people of *all* the states. If they are or should be oppressive or affect unfavorably the state governments, the remedy is with the people—and with *all the people of all the states*, who will not be slow to apply it by repealing or altering the law imposing the tax. But if the stocks of the United States could be taxed by each state, then there would or might be a scramble, each acting separately and striving to tax the United States stocks the highest, and thus secure to itself the greatest advantage at the expense of *all the states*, or the people of the states.

The argument that the instruments of each state are entitled to the same exemption from taxation by any law of the United States, that the instruments used by the latter are entitled to from state taxation, is based upon a supposed *equality* of rights and powers as to those instruments, and also supposes, in some respects, an equal distribution of rights and powers between the states and general government. So far from this being true, the people, the source of all the power of both governments, granted to the United States certain specific powers of sovereignty. The boundary lines of these powers, which have never yet been very accurately ascertained, must be drawn, and when drawn, if rightly drawn, however much they may trench upon the supposed powers of state sovereignty, no injustice will be done.

First, then, there must be carved out to the United States whatever has been granted to them. The power granted to them to borrow money, carried with it, as an incident and necessary to the end in view, the power and right to protect their stocks against state taxation. The power granted to lay and collect taxes gave to them the power to tax, either by a direct or indirect tax or both, in the mode prescribed in the constitution, *all* the persons and *all* the property of citizens within the limits of their sovereignty. To this there is no exception. This power is *first* to be carved out and taken, and the *whole* of it, including whatever is incidental and necessary to the end in view, however much it may trench upon the powers which the states have heretofore exercised and enjoyed, and which they supposed they had a right to exercise and enjoy.

It is maintained with great ability that the principles laid down in the opinion of Chief Justice MARSHALL in the case of *McCulloch v. State of Maryland*, 4 Wheat., 429, decide the case before us. He says in that opinion: " It is obvious that it (the power of taxation) is an incident of sovereignty, and is co-extensive with that to which it is an incident. All subjects

over which the sovereign power of a state extends, are objects of taxation; but those over which it does not extend are upon the soundest principles exempt from taxation."

"The sovereignty of a state extends to everything which exists by its own authority, or is introduced by its permission. But does it extend to those means which are employed by Congress to carry into execution powers conferred on that body by the people of the United States? We think it demonstrable that it does not. Those powers are not given by the people of a single state. They are given by the people of the United States to a government whose laws, made in pursuance of the constitution, are declared to be supreme."

This opinion was delivered in a case where the question presented was, whether the law of the state of Maryland, imposing a tax on the operations of the branch of the Bank of the United States within that that state, was valid. And it was declared not to be, because it was a tax on the operations of an instrument employed by the government of the Union to carry its powers into execution. It is urged that the principle which underlies this and the other decisions we have cited is, that there are certain invisible lines which are the limits of national sovereignty and state sovereignty, and which, though unseen by the naked eye, are just as much boundaries as those which divide the nations of the earth. Within the limits of national sovereignty, state sovereignty is powerless; and within the limits of state sovereignty national sovereignty has no rights. Governed by this principle, the court declared no individual state could tax the instruments the United States used (be they stocks or banks or any other instrumentalities) to execute their powers. Why? Because it is said they were instruments created by Congress within the limits of national sovereignty, and kept and used within those limits. They never passed within the limits or boundaries of state sovereignty, not even when those instruments or stocks became the property of citizens of a state. State stocks, on the other hand, when they be-

come the property of individual citizens, pass, like other property of the citizen, within the limits of national sovereignty. The citizen and his state stocks are within the limits of state sovereignty for the purposes of state taxation, and they are within the limits of national sovereignty for the purposes of national taxation. And according to this principle the process stamp law is void, so far as it applies to writs of state courts. A process issued by a state court is an instrument created by the state. It has the power to create it. It is acting within the limits of its sovereignty. When it is created it is kept within those limits. It never passes within the limits of national sovereignty, and consequently is never under its control or subject to its power. Therefore the act of Congress declaring when this process shall be void, and when valid, is of no validity. It seems to me there is force in this reasoning; and it may be that so much of the stamp law as declares a process issuing from a state court *void* by reason of its not being stamped, is itself void. But we do not see that this would affect the validity of the tax as a tax on the person for whose benefit the writ is obtained and used. The tax may be enforced against him by fine or by process against his person or his property. He is within the limits of national sovereignty, and may be taxed for exercising the right or privilege to collect a debt or recover property under and by virtue of state laws, as well as for exercising the right or privilege of manufacturing goods or conveying real estate under and by virtue of the same laws.

But carry this argument one step further, it is said, and it overthrows the tax as a tax upon the person of the suitor. If the process of a state court is an instrument within the exclusive limits of state sovereignty, the person who uses it, in the use of it and in the benefits derived from it, is also exclusively within the limits of state sovereignty, and cannot be taxed by the United States for benefits from such use. This reasoning is not sound. The national government guaranties to each of

Jones et al. vs. The Estate of Keep.

the states a republican form of government. It protects them against invasion and insurrection, and hence the United States and every citizen of any one of the states are interested in the prosperity of every state—interested in the benefits the citizens of each state derive from the laws of either the state or United States. The benefits a citizen receives while pursuing his private business or calling under and pursuant to the laws of the state of which he is a citizen, are not derived from the laws of that state *alone*, but the laws of the Union, throwing its protection over the individual state and the very laws under which he acts, contribute to those benefits; and for such benefits he may be taxed by Congress. But these remarks apply only to the right to impose the tax upon the plaintiff, and not to the right to impose it in the *manner* prescribed in the act of Congress, by requiring him to affix a stamp to a writ issuing out of a state court, and exclusively under the control of that court.

It appears then to me, that the right of the United States to have their instruments, on which they borrow money exempt from state taxation, and their right to tax directly or indirectly the persons and property of the citizens of the states, although such taxation may incidentally affect the instrumentalities which a state uses as a proper means to execute its powers, rest upon the same foundation—the grants in the constitution of the United States. If the power is there, "then it is an absolute power, which acknowledges no other limits than those expressly prescribed in the constitution; and like sovereign power of every other description, is entrusted to the discretion of those who use it."

There are many and obvious reasons which I shall not stop to give, but which will suggest themselves to a reflecting mind, why the United States should have both these rights or powers. One of them may not be sufficient to enable them to protect their own securities and give them ability to pass tri-

umphantly through the great crises which yet await us as a nation.

I have thus given my own views; and I am free to admit that my own mind is not free from doubt on the question before us. But doubt alone is not sufficient to authorize a court to pronounce a law unconstitutional. And courts whose judgments can be reviewed (as ours in this case) by another tribunal, whose judgment alone is binding, have usually adopted the rule that they will not declare a law unconstitutional, except when it is clearly and undoubtedly so. Entertaining a doubt as to the constitutionality of the law, I differ from the majority of the court as to the judgment which should be rendered, being of opinion that we ought to hold the law valid until the supreme court of the United States declare it void.

Order reversed.