## Case No. 3,675.

### DAY v. BUFFINTON.

[3 Cliff. 376; 11 Int. Rev. Rec. 205; 5 Am. Law Rev. 176; 2 Leg..Gaz: 249.][1]

Circuit Court, D. Massachusetts. May Term, 1871.[2]

INCOME TAX—JUDGES' SALARIES—CONSTITUTIONAL LAW.

The salary of a judge of a court of record, payable out of the treasury of a state, is not legally taxable, as income under the internal revenue laws of the United States; the government of the United States having no power under the constitution to levy such tax.

[Explained in Sweatt v. Boston, H. & E. R. Co., Case No. 13,684. Cited in Wheeling, P. & C. Transp. Co. v. Wheeling, 99 U. S. 282.]

[See note at end of case.]

This was an action of contract [by Joseph M. Day against James Buffinton] to recover the amount of taxes assessed under the internal revenue laws of the United States, upon the plaintiff's salary as judge of probate and insolvency for the county of Barnstable, in the commonwealth of Massachusetts.

It was argued before CLIFFORD, Circuit Justice, and LOWELL, District Judge, at the October term; 1869, upon the following agreed facts: "That the plaintiff was, during the years 1866 and 1867, a judicial officer of said commonwealth, to wit, a judge of the court of probate and insolvency for said county of Barnstable, which said court is a court of record. That the defendant was, in the year 1867, the United States collector of internal revenue for the first congressional district in said commonwealth, and that said county of Barnstable is within said first congressional district. That in said years 1866 and 1867, the United States assessor of internal revenue for said first congressional district, against the written protests of the plaintiff, made before assessment, assessed upon his salary as judge, as aforesaid, taxes amounting in all to $61.51. That against the written protests of the plaintiff, before collection thereof, delivered to the defendant, the defendant collected said taxes of the plaintiff. That the plaintiff's salary as judge, as aforesaid, is fixed by law, and is payable out of the treasury of said commonwealth, and that the plaintiff has in all respects complied with the provisions of the revenue laws of the United States prescribing the conditions under which actions may be brought for the recovery of taxes illegally assessed under said laws."

D. Foster, for plaintiff.

G. S. Hillard and J. C. Ropes, for defendant.

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission. 5 Am. Law Rev. 176, contains only a partial report.]

[2] [Affirmed in 11 Wall. (78 U. S.) 113.]

Dwight Foster, for plaintiff.

The question before the court is whether the salary of a judge of a court of record, payable out of the treasury of the state of Massachusetts, is legally taxable as income under the internal revenue laws of the United States.

"The powers of the general government and of the state, although both exist and are exercised within the same territorial limits, are yet separate and distinct sovereignties acting separately and independently of each other within their respective spheres." Ableman v. Booth, 21 How. [62 U. S.] 516. The sphere of action appropriated to each is as far beyond the reach of the other "as if the line of division was traced by landmarks and monuments visible to the eye. . . . . Each is sovereign and independent in its sphere of action, and exempt from the interference or control of the other either in the means employed or functions exercised." Bank of Commerce v. New York City, 2 Black [67 U. S.] 635. "The people of each state compose a state having its own government and endowed with all the functions essential to separate and independent existence. In many articles of the constitution the necessary existence of the states, and, within their proper spheres, the independent authority of the states, is distinctly recognized." Lane Co. v. Oregon, 7 Wall. [74 U. S.] 76. "That the power to tax involves the power to destroy; that the power to destroy may defeat and render useless the power to create; that there is a plain repugnance in conferring on one government a power to control the constitutional measures of another, . . . . are propositions not to be denied." McCulloch v. Maryland, 4 Wheat. [17 U. S.] 430. "The right of taxation when it exists is necessarily unlimited in its nature. It carries with it inherently the power to embarrass and destroy." Austin v. Alderman, 7 Wall. [74 U. S.] 699. The precise converse of the question now under discussion was decided in Dobbins v. Commissioners of Erie Co., 16 Pet. [41 U. S.] 435. There, under a law of the state of Pennsylvania, a tax was imposed on "the emoluments of the office" of the captain of a United States revenue cutter. It was said by the court to be "levied on a valuation of the income of the office." Page 445. And it was held that this could not be done constitutionally.

The general principles relied upon in the present cause are affirmed in an unbroken series of adjudications commencing, half a century ago, with McCulloch v. Maryland, 4 Wheat. [17 U. S.] 316, and coming down to Society for Savings v. Coite, 6 Wall. [73 U. S.] 594, and other cases in the same volume, in which the opinions of the court were delivered by Mr. Justice Clifford. See, also, Weston v. Charleston, 2 Pet. [27 U. S.] 449; Bank Tax Case, 2 Wall. [69 U. S.] 200; Van Allen v. Assessors, 3 Wall. [70 U.

S.] 573. It is clearly established by Weston v. Charleston, and Dobbin v. Commissioners of Erie Co., that no valid distinction can be drawn between the taxation of an office itself eo nomine and the taxation in a general assessment upon incomes of the salary or emoluments of an office, which are the legal compensation for the performance of official duties, and are presumed to be only such adequate remuneration as is requisite to secure the services of a competent incumbent. In each case it is held to be a fatal objection to the power to lay such a tax; that if admitted to exist at all there can be no limit to the extent to which the imposition may be carried. The office taxed exists only at the mercy of the taxing power. In the cases heretofore decided by the supreme court of the United States, the taxes adjudged invalid have been imposed by state legislation upon instrumentalities of the federal government, and there has existed an additional obstacle in the fact that the federal government is declared by the constitution to be supreme within its sphere of action. But this has been adverted to and relied upon by the court only as a cumulative argument, and by no means as the principal or essential foundation of the decisions which have been made. The right of the state to exist as a body politic, to have a government with executive, legislative and judicial departments, to have state offices filled and their duties performed, does not depend upon the will or forbearance of congress. But if state offices or their emoluments are taxable at all by the federal government, that taxation may be carried to the point of destruction. To admit the principle is to admit the power of congress to tax every state government out of existence. The act of congress (July 1, 1862, 12 Stat. 483) which required stamps to be affixed to writs and other original processes in courts of record was held by the highest tribunals of several states to be unconstitutional in its application to state courts. Warren v. Paul. 22 Ind. 276; Union Bank v. Hill, 3 Cold. 325; Jones v. Keep's Estate, 19 Wis. 369; Fifield v. Close, 15 Mich. 505. And this provision was repealed by congress soon after these decisions were published. It is believed that the reasoning of these respectable authorities will be found to be fully applicable to the case at bar. See, also, Carpenter v. Snelling, 97 Mass. 452.

In the case at bar there is no attempt to impugn the constitutionality of an act of congress. We are dealing only with a question of construction. The court is merely called upon to limit the application of general language by excluding from its operation a description of income, which there is no reason to believe that congress intended to embrace. The internal revenue laws do not in terms impose any tax on state offices, or their emoluments, or the income derived therefrom;

and, considering the well-settled and universally known principles of constitutional law on this subject, it is fair to conclude that if such an intention had existed it would have been expressed in special and explicit provisions of the act. U. S. v. Coombs, 12 Pet. [37 U. S.] 72. "General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always therefore be presumed that the legislature intended exceptions to its language, which would avoid results of this character." U. S. v. Kirby, 7 Wall. [74 U. S.] 486.

John C. Ropes, for defendant.

By section 8 of the first article of the constitution of the United States, it is provided, that "congress shall have power to lay and collect taxes, duties, imposts, and excises, to pay the debts and provide for the common defence and general welfare of the United States; but all duties, imposts, and excises shall be uniform throughout the United States." In pursuance of this provision of the constitution, the statutes of the 30th of June, 1864, of the 3d of March, 1865, and the 2d of March, 1867, were passed by the thirty-eighth and thirty-ninth congresses. 13 Stat. p. 281, § 116; Id. p. 479, § 1; 14 Stat. p. 137, § 9; Id. p. 477, § 13. These statutes impose a tax of five per centum on the gains, profits, and income of every person residing in the United States, derived from any source whatever. Under these statutes the plaintiff was assessed upon his salary, as judge of probate, paid him by the state of Massachusetts. This tax he seeks to recover back in this action.

The question is, whether the United States government can lawfully impose a tax upon a salary paid by a state to an officer of that state.

I. It is obvious, in the first place, that the constitution and the statutes make out a prima facie case for the government. The only limitation imposed in terms by the constitution on the general power of taxation is, that the taxes shall be uniform throughout the country. That this limitation has been duly observed in laying the tax in question is not denied.

II. But it is urged that there is an implied limitation to the power of taxation granted by the constitution, namely, that it shall not be so exercised as to destroy or even impair the (so-called) sovereignty of the states, or in any way injuriously to affect the state governments; and further, that this tax, if assessed upon state officials, is in direct conflict with this limitation, and is therefore unconstitutional.

1. We deny that there is any such implied limitation. There is no necessary implication of this nature growing out of the relations of the states to the federal government. The same people that through the federal government lay the tax in question, establish, in the different states, the officers and the insti-

tutions upon the income and gains of which the tax is assessed. The tax thus imposed by the people of all the states, acting through their representatives in congress, is uniform throughout all the states. Taxation and representation go together. There is an implied limitation on the power of a state to tax, however, in that a state cannot tax the institutions and officers of the federal government. Here there is necessarily to be implied a restriction on the power of the states, for such taxes are not uniform or equal throughout the country; nor are they imposed by the same power which creates the offices and institutions taxed; and they render it possible for one state to hinder and obstruct the workings of the superior and independent sovereignty of the United States. McCulloch v. Maryland, 4 Wheat. [17 U. S.] 316; Osborn v. U. S. Bank, 9 Wheat. [22 U. S.] 738; Weston v. Charleston, 2 Pet. [27 U. S.] 449; Dobbin v. Commissioners of Erie Co., 16 Pet. [41 U. S.] 435; Story, Const. § 1053; Cooley, Const. Lim. 479–481; Bank of Commerce v. New York City, 2 Black [67 U. S.] 620; 1 Kent, Comm. 425–429; Bank Tax Case, 2 Wall. [69 U. S.] 200.

The claim that the banks, offices of trust and profit, bonds, etc. of the state governments are, by the converse application of the principles laid down in the cases cited above, exempted from taxation by the United States government, is not tenable. The result would be to exempt from federal taxation an enormous amount of property; for not only would state bonds be exempt, but also all railroad and other bonds guaranteed by states, all bonds of municipal corporations,—the creatures of the state governments,—and, in fact, it is difficult to say where the line could be drawn. The power of taxation granted by the constitution to the general government would in great measure be rendered nugatory.

To support this enormous claim of exemption from national taxes, it is urged that "the states are to exist with independent powers and institutions within their spheres," just as "the federal government is to exist with independent powers and institutions within its sphere;" and that, consequently, the federal government cannot tax the agencies and instruments used by the states to carry on government within their own proper spheres.

See remarks of Marshall, C. J., in McCulloch v. Maryland, 4 Wheat. [17 U. S.] 429, 436; Warren v. Paul, 22 Ind. 279; State v. Tax Collector, 2 Bailey, 654. See, also, People v. Commissioners of Taxes, 23 N. Y. 192, reversed in 2 Black [67 U. S.] 620; Fifield v. Close, 15 Mich. 509. But this is mere theory, not law. The real and only subject for inquiry in such cases is, not whether the person or thing affected is part and parcel of the machinery of a state government, but whether the federal government is acting under one of its enumerated (or necessarily implied) powers. Thus, if a state bank or railroad is

taxed, the question is, not whether these institutions are part of the fiscal machinery of the state, but whether the constitution gives to the federal government the power of taxation. So, if the United States take, for instance, a state jail under the right of eminent domain, the question is, not whether the property taken is part of the apparatus of the state for the prevention of crime, but whether the right of eminent domain belongs to the federal government. This is the only rule absolutely free from embarrassment in its application, and the only rule proper to be observed in investigating the extent of the sovereign powers granted to the general government. If the act done is within the scope of one of these sovereign powers, there is in law, and can be, no limitation in its exercise. The extent to which it shall be exercised rests entirely in the discretion of congress.

If the foregoing views are sound, all the persons in the United States, whoever they may be; all the property in the United States, to whomsoever it may belong and however acquired; all the offices and all the officers of the state governments; all the state banks and all the state securities,—are subject absolutely to the discretion of congress in the exercise of the general power of taxation vested in the federal government. Howell v. Maryland, 3 Gill, 14; Jones v. Keep's Estate, 19 Wis. 369, 381; besides the cases before cited.

No implied restriction on the power of the government arises in law from the fact that the power of taxation granted by the constitution to the federal government may be so wielded as to injure or even destroy the state government. Such risks are always taken when a general government is established; as for instance, when the people of Massachusetts, inhabitants of towns and cities, established, in 1780, a state government, with powers similarly liable to effect, by their abuse, the virtual destruction of municipal government. See remarks of Marshall, C. J., in McCulloch v. Maryland, 4 Wheat. [17 U. S.] 428, and in Providence Bank v. Billings, 4 Pet. [29 U. S.] 515, 562, 563. The only safety against the abuse of this power to the injury of the state governments is in the discretion of congress, and especially in the fact that the people of the states and the people of the United States are one and the same people. There is no more danger of the abuse of the power of taxation by the general government than of the abuse of the other great powers given to it, such as the power to raise and maintain armies to call out the militia, to make treaties, or even the implied right of eminent domain. The discretionary power in any government must be vested somewhere. In our government it is vested in the United States. Const. art. 6.

2. But if the court shall be of opinion that there is such a limitation to the taxing power of the federal government, as that it

shall not be exercised so as to destroy or even impair the (so-called) sovereignty of the states, or in any way injuriously to affect the state governments, then we deny that the tax in question in this suit conflicts with that limitation either theoretically or practically.

The tax in question is a general income tax, affecting the income of probate judges only incidentally, and not aimed at the office. Even supposing that state offices and officers should be held exempted from federal taxation by a converse application of the principles laid down in Dobbins v. Commissioners, 16 Pet. [41 U. S.] 435, yet that does not settle this case. It has never been decided that a state may not lawfully tax the income of an officer of the general government. Such a tax has been considered in Weston v. Charleston, 2 Pet. [27 U. S.] 449, 483, and in Melcher v. Boston, 9 Metc. [Mass.] 77. See, also, the opinion of the court of appeals of New York in People v. Commissioners of Taxes, 23 N. Y. 192, and the arguments of counsel and opinions in State v. Tax Collector, 2 Bailey, 654. We claim, then, that theoretically the tax in question does not conflict with the exercise by a state of all its lawful powers. But practically the case presents no difficulty whatever. The incomes of all United States officers, except the president and the judges of the supreme court, are taxed to the same extent as are the incomes of all state officers. It is impossible for the court to say that such a tax, so uniform and so indiscriminate, is, in any intelligible and legal sense, calculated to impair the exercise of the constitutional powers of the states.

Mr. Foster, in reply.

Two propositions are undeniable: First, that, within the sphere of their jurisdiction, the states are just as independent of the federal government as the government, within its sphere, is independent of the states. Second, that a government, the processes and instrumentalities of which are liable to taxation by another sovereignty, cannot be in any sense independent of it. These two propositions cover the case.

The defendant's argument in effect concedes that when one government has the power to tax another, the one liable to be taxed must necessarily be subject and subordinate to the one which has the power to tax. According to his theory we do not live under a complex system of state and federal governments each independent within its sphere, but the continued existence of the states depends on the moderation and forbearance of the United States in the exercise of its taxing powers. This cannot be.

CLIFFORD, Circuit Justice. Taxes were assessed against the plaintiff under the internal revenue laws of the United States upon his salary as judge of probate and in-

solvency for the county of Barnstable in this state for the years 1866 and 1867, and, having paid the same under protest, he brought an action of assumpsit against the defendant as the collector of such taxes for the first collection district, to recover back the amount so paid, both assessments amounting to the sum of $61.50. The agreed statement shows that the salary of the plaintiff as such judge is fixed by law, and that it is payable out of the treasury of the state, and that he made due protest before the taxes were assessed and at the time he made the payments.

Five per centum on the excess over $600, and not exceeding $5,000, was required to be levied, collected, and paid annually by the act of the 30th of June, 1864, as amended by the act of the 3d of March, 1865, upon the annual gains, profits, and income of every person residing in the United States . . . . whether derived from any kind of property, rents, interests, dividends, or salaries, or from any profession, trade, employment, or vocation . . . . or from any other source whatever. 13 Stat. p. 281, § 116; as amended, Id. p. 479, § 1. The first assessment was made under that provision, and the second was made under a provision in all respects similar, except that the exemption was $1,000 instead of $600, as in the former act. 14 Stat. p. 477, § 13. Power to lay and collect taxes, duties, imposts, and excises to pay the debts and provide for the common defence and general welfare of the United States, is conferred by the constitution, and the only limitation annexed in terms to that clause of the instrument is that all duties, imposts, and excises shall be uniform throughout the United States. But the powers granted to congress are not in all cases exclusive of similar powers existing in the states, unless where the constitution has so provided, or the exercise of a like power is prohibited to the states, or there would be a direct or necessarily implied repugnancy in the exercise of it by the states. Exclusive authority over all places purchased by the consent of the legislature of the state, in which the same shall be, for the erection of forts, magazines, dockyards, and other needful buildings, is delegated to congress, and it follows as a necessary consequence that the state legislatures cannot exercise any power or jurisdiction over such places, as the exclusive authority over them is vested in the national government. State authorities cannot coin money, emit bills of credit, or make anything but gold and silver a tender in payment of debts, as they are prohibited from so doing by the constitution, nor shall any state without the consent of the congress lay any imposts or duties on imports or exports except what may be absolutely necessary for executing its inspection laws. Const. art. 1, § 10. Laws establishing rules of naturalization are required to be uniform, and it is held that the power to pass such laws is

vested exclusively in congress, as the exercise of such a power by the states would be incompatible with that condition as annexed to the exercise of that power. Houston v. Moore, 5 Wheat. [18 U. S.] 23; Chirac v. Chirac, 2 Wheat. [15 U. S.] 259.

Cases arise where it is held that the mere grant of power to congress, unaccompanied by any legislation under the grant, does not imply a prohibition on the states to exercise the same power. Such cases, however, are not numerous, and whenever the nature of the power granted or the terms in which the grant is made are of a character to show that the framers of the constitution intended that it should be exclusively exercised by congress, the subject is as completely taken from the state legislatures as if the constitution contained an express prohibition to that effect. Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 122; Ogden v. Saunders, 12 Wheat. [25 U. S.] 213. Undoubtedly the power of congress to lay and collect taxes, duties, imposts, and excises is coextensive with the territory of the United States, but when properly construed it does not interfere with the power of the states to levy taxes for the support of their own governments, nor is the exercise of that power by the states an exercise of any portion of the power that is granted to the federal government. Loughborough v. Blake, 5 Wheat. [18 U. S.] 317; Gibbons v. Ogden, 9 Wheat. [22 U. S.] 1; Waring v. The Mayor, 8 Wall. [75 U. S.] 121. State power to lay and collect taxes, for the support of their government, may reach every subject over which the sovereign power of the state extends. They cannot tax imports nor exports without the consent of congress, as they are prohibited from so doing by the constitution. Want of authority in the states to tax the securities of the United States issued in the exercise of the admitted power of congress to borrow money on the credit of the United States is equally certain, although there is no prohibition in the constitution establishing any such rule. Hamilton Co. v. Massachusetts, 6 Wall. [73 U. S.] 639; Society for Savings v. Coite, 6 Wall. [73 U. S.] 594.

All subjects over which the sovereign power of a state extends are as a general rule proper objects of taxation, but the power of a state of the Union to lay taxes does not extend to the instruments of the national government, nor to the constitutional means employed by congress to carry into execution the powers conferred in the federal constitution. Tax laws of the states cannot restrain the action of the national government, nor can they abridge the operation of any law which congress may constitutionally pass. They may extend to every object of value within the sovereignty of the state belonging to the citizens, but they cannot reach the instruments and means of the federal government, nor the administration of justice in the federal courts, nor the collection of the public revenues, nor interfere with any constitutional regulation enacted by congress. McCulloch v. Maryland, 4 Wheat. [17 U. S.] 429; Brown v. Maryland, 12 Wheat. [25 U. S.] 448.

Power to tax its citizens or subjects in some form is an attribute of every government, residing in it as part of itself, and hence it follows that the power to tax may be exercised at the same time upon the same objects of private property by the state and by the United States without inconsistency or repugnancy. Society for Savings v. Coite, 6 Wall. [73 U. S.] 606; Providence Bank v. Billings, 4 Pet. [29 U. S.] 563. Such power exists in the state as one conferred or not prohibited by the state constitution, and in the federal government under an express grant. Such powers are therefore perfectly consistent, though the two governments, in exercising the same, act entirely independent of each other, as applied to the property of the citizens.

Congress in its discretion fixes by law the compensation to be allowed to federal officers; and having exercised that discretion, and fixed the amount of compensation, the law of congress confers upon the officer the right to receive that amount when he has performed the duties devolved upon the office; and the settled rule of decision in the supreme court is that any law of a state imposing a tax upon such an office diminishing the recompense allowed to such officer is in conflict with the law of congress which defines and secures to the officer the prescribed compensation. Dobbins v. Commissioners, 16 Pet. [41 U. S.] 447.

Taxation by the states of the kind mentioned is declared to be unconstitutional, because the exercise of such a power is an appropriation of the revenue, levied and collected to pay the debts and provide for the common defence and general welfare of the United States, to the support of the state government, and because the levying and collection of such taxes constitute a direct interference with the means provided by congress to carry into effect every power granted in the constitution. Prior to the date of that decision the supreme court had decided that the states could not tax the public securities without the consent of congress, nor levy any tax upon imports, and the court was equally unanimous and decisive in opinion that a state law imposing a tax upon the salary of a federal officer was unconstitutional and void. McCulloch v. Maryland, 4 Wheat. [17 U. S.] 429; Weston v. Charleston, 2 Pet. [27 U. S.] 449; Osborn v. U. S. Bank, 9 Wheat. [22 U. S.] 738.

The argument for the plaintiff is, that the converse of the proposition is equally true,— that a law of congress taxing the salary of a state officer is equally unauthorized as an appropriation of the revenue raised by the legislature to defray the necessary expenses of the state, and that it is equally unwarranted as

an unauthorized interference with the operations of the state governments. Perfect concurrence in the rule exempting the salary of the federal officer from taxation by the states is expressed by the defendant, but he denies that the converse of that proposition has any foundation whatever. Federal officers and the instruments and means of the federal government, it is conceded, are exempt from state taxation, but it is denied that the federal government is subject to any such implied prohibition, even in the case before the court, because the tax in question, it is argued, is imposed by the same people who established the offices and institutions in the states which are subjected to the burden of the controverted tax. Suppose the tax in question is imposed in the constitutional sense by the same power as that which created the offices and institutions subjected to the payment of the same, still it is not perceived that the concession advances the argument, unless it be assumed that the offices and institutions subjected to the burden imposed are under the control of the power imposing the tax, which is the precise question in controversy between the parties. Disguised as it may be, the theory of the defendant is that the law imposing the tax is valid, because congress in enacting the law imposing it exercised a paramount power over the revenues of the state raised and appropriated for the purposes declared in the agreed statement.

The proposition of the defendant is in substance and effect that the states cannot tax the instruments and means of the government of the United States, because the federal government is supreme, but that the latter may tax the instruments and means of the state governments, because, as he assumes, the states are subordinate to the United States in the same unqualified sense as the counties of a state are to the paramount authority by which they were created. Unquestionably the constitution and the laws of the United States made in pursuance thereof, and all treaties made under the authority of the United States, are the supreme law of the land, because it is so ordained in the constitution, but the same instrument also provides that the powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively or to the people, and it is an obvious rule of construction that these two provisions must be considered together in determining the question under consideration, as they are important provisions in the same instrument, and cannot be regarded as in any respect repugnant to each other.

Counties and other municipal corporations were created by the states; but the states were not created by the United States, as the states existed as independent sovereignties before even the Union was formed, and they continued to be such from the date of

the Declaration of Independence until the articles of confederation were ratified; and even then it was provided in the second article that "each state retains its sovereignty, freedom, and independence, and every power, jurisdiction, and right which is not by the confederation expressly delegated to the United States in congress assembled." Few in number and restricted in operation as the powers granted to the United States in the articles of confederation were, still they were sufficient, with the co-operation of the several states, to carry the country through the war of the Revolution, and to enable the patriots of that day to lay the foundations of our public liberty and national independence. Though the powers granted were sufficient for the time, still when peace came they were soon found to be wholly inadequate to the exigencies of the new government in the relations which it sustained to the several states.

Such powers as the confederation possessed operated only upon the states as corporations, and not upon the people of the states; and the system of government as adopted made no provision for an executive of any kind, nor for a judiciary except in certain matters of prize, and for the trial of piracies and felonies committed upon the high seas. Radical defects existed also in the principles of the system, as the congress could not lay and collect taxes for the support of the government, nor was it vested with any power to compel the states to contribute to the common treasury their just proportions of the amount necessary to defray the expenses incurred for the common defence and general welfare. Difficulties and defects of the kind, too numerous to mention in this investigation, led to the formation and adoption of the present constitution, which, as recited in the preamble, was ordained and established, "in order to form a more perfect union, establish justice, insure domestic tranquillity, provide for the common defence, promote the general welfare, and secure the blessings of liberty to ourselves and our posterity." Perpetuity was as much the object which the framers of the instrument had in view as any other of the high purposes therein described, as their declared aim was to secure the blessings of liberty to their posterity as well as to themselves and their constituents. They did not attempt to amend the old system, but they ordained a new one, vesting the powers of government in three separate departments, to wit, the legislative, the executive, and the judicial, and providing that the powers granted should operate not merely upon the states as under the confederation, but upon the whole people, and investing the new government with the most ample powers to enforce the prohibitions of the constitution, and the laws passed by congress in pursuance of its provisions.

Evidence to show that the union of the states as perfected in the constitution was

intended· to be indissoluble, pervades every part of the instrument, as is sufficiently shown from the extent of the powers granted, and the amplitude of the means provided to carry them into effect. Congress may legislate for all the purposes specified in the express grants conferring such powers, and may pass all laws necessary and proper "for carrying into execution the foregoing powers, and all other powers vested by the constitution in the government of the United States, or in any department or office thereof."

Provision is also made that the president shall take care that the laws be faithfully executed,: and that the judicial power shall extend to all cases in law and equity, arising under the constitution, the·laws of the United States, and treaties made or which shall be made under their authority. The intended permanency of the new government is portrayed in every one of these provisions, to which it would seem that nothing need be added to show that the doctrine of secession is a wicked heresy; but, if more be needed, it is found in section 4 of the fourth article of the constitution, which provides that the United States shall guarantee to every state in this Union a republican form of government, and shall protect each of them against invasion and . . . . domestic violence. None of these views, however, as to the nature and objects of the federal constitution or the permanent and indissoluble character of the new government are controverted by either party in this case, and for that reason they need not be further considered at the present time. Conceded as they are, they may be assumed as truths which cannot be contested; but it does not follow that the government ordained by the constitution is a government of unlimited powers. On the contrary, the settled construction is that the government of the United States is one of limited powers, which is shown to a demonstration by the tenth amendment, which reserves to the states respectively or to the people all power not delegated to the United States by the constitution, nor prohibited by it to the states. McCulloch v. Maryland, 4 Wheat. [17 U. S.] 421; Hepburn v. Griswold, 8 Wall. [75 U. S.] 614; 2 Story, Const. 142.

Power to lay and collect taxes was possessed by the states even before the Union was formed, and many years before the constitution was ordained. Massachusetts adopted her constitution in 1780, and the same with certain alterations and additions is still in full force. Authority was therein given, and in that respect it is unchanged, empowering the legislature "to impose and levy proportional and reasonable assessments, rates, and taxes upon all the inhabitants of, and person resident and estates lying within the said commonwealth, and also to impose and levy reasonable duties and excises upon any produce, goods, wares, merchandise, and commodities whatsoever brought into, pro-

duced, manufactured, or being within the same." Provident Inst. v. Massachusetts, 6 Wall. [73 U. S.] 623.

Since the constitution was adopted, the states cannot lay any imposts or duties on imports or exports except what may be absolutely necessary for executing their inspection laws, not because congress may lay and collect taxes, duties, imposts, and excises, but because the constitution expressly provides that no state shall exercise that power without the consent of congress. Article 1, § 10. Want of authority in the states to tax the securities of the United States, issued in the exercise of the admitted power of congress to borrow money on the credit of the United States, is equally certain, although there is no express prohibition in the constitution to that effect. Outside of those restrictions, however, the power of the states to tax extends to all objects except the instruments and means of the federal government within the sovereign power of the state. Hamilton Co. v. Massachusetts, 6 Wall. [73 U. S.] 639. "Taxes" are defined to be burdens or charges imposed by the legislative power upon persons or property to raise money for public purposes, or, as another text-writer defines the word,· a tax is a contribution imposes by the government for the service of the state. · Cooley, Const. Lim. 479; Blackw. Tax Titles, 1. Moneys derived from state taxes are as much designed for public purposes or for the service of the state, as moneys raised under the law of congress, and are just as essential to the support and maintenance of our complicated system of government, as it is an obvious truth that no constitutional government can long continue to exist without that power, or if despoiled of the avails which accrue from its exercise. Officers, legislative, executive, and judicial, are as essential to the existence of the state governments as they are in conducting the affairs of the United States, and it is just as necessary that they should be compensated at the public expense. Comparatively few limitations can safely be annexed to the power of taxation, as the exercise of the power is essential to the very existence of government, and the extent of the demand for its exercise cannot be foreseen, but there is a plain repugnance in conferring upon one government a power to tax the revenues of another in a system of government like that existing in our country, where the constitution of each of the two governments recognizes the other as a part of·the system, and where each rests upon the admitted principle that both are to be perpetual.

Influenced by these considerations, our conclusion is that the established rule which prohibits the states from taxing the instruments and means of the federal government also withdraws the revenues of the state from the taxing power conferred by the constitution of the United States. Power to tax for state purposes is as much an exclu-

sive power in the states as the power to lay and collect taxes to pay the debts and provide for the common defence and general welfare of the United States is an exclusive power in congress. Both are subject to certain prohibitions and restrictions, but in all other respects they are supreme powers possessed by each government entirely independent of the other. Fifield v. Close, 15 Mich. 505; Warren v. Paul, 22 Ind. 279; Jones v. Keep's Estate, 19 Wis. 369; Union Bank v. Hill, 3 Cold. 325.

Most of the powers conferred upon the government of the United States are exclusive, and it is unquestionably true that the national government in the exercise of those powers is supreme, but it is equally true that powers not delegated to the United States by the constitution nor prohibited by it to the states are reserved to the states respectively or to the people, and it follows that the states in the exercise of such powers as are not delegated to the United States and are reserved to them are also supreme. Exclusive powers possessed by the United States cannot be exercised by the states, nor can the exclusive powers possessed by the states be exercised by the federal government. They are in those respects, though exercising jurisdiction within the same territorial limits, "separate and district sovereignties, acting separately and independently of each other within their respective spheres," just as fully "as if the line of division was traced by landmarks and monuments visible to the eye." Ableman v. Booth, 21 How. [62 U. S.] 516; McCulloch v. Maryland, 4 Wheat. [17 U. S.] 429; Austin v. Aldermen, 7 Wall. [74 U. S.] 699.

Pursuant to the constitution, congress may lay and collect taxes, duties, imposts and excises to pay the debts and provide for the common defence and general welfare of the United States; and the states, subject to the prohibitions of the constitution, express and implied, may lay and collect taxes and excises for the support of their respective state governments, and each in that behalf is sovereign and independent in its sphere of action, and exempt from the interference or control of the other, either in the means employed or functions exercised. Unless it be so, then the states have only a permissive existence, as it is conceded that the power to tax involves the power to destroy, and that the power to destroy may defeat and render useless the power to create. McCulloch v. Maryland, 4 Wheat. [17 U. S.] 431. Grant that the theory of the defendant is correct, and complete subjugation of all state authority must necessarily follow; as congress, if they may tax one state office, may tax every other office known to the constitution and laws of a state.

They may tax the salary of the governor, and the travel and per diem of the members of the legislature, as well as the salaries of the judges of the state courts. Revenue may be collected by the states; but, if the views of the defendant are correct, it may be absorbed by the taxing power of congress as fast as it is paid into the treasury of the state, and the state may be left as destitute of means to defray its current expenses as if the power to lay and collect taxes and excises did not exist. Bank Tax Case, 2 Wall. [69 U. S.] 200; Van Allen v. Assessors, 3 Wall. [70 U. S.] 573.

Suggestion is made that the theory assumed by the plaintiff, if sustained by the court, will exempt a large amount of property from federal taxation; but the decisive answer to that suggestion at the present time, is that the decision of the court is confined to the case presented in the agreed statement. Such a tax, in our opinion, is as indefensible in principle as if levied upon the office held by the plaintiff, or directly upon the revenues of the state before they are paid out of the state treasury, as the tax levied and collected operates to that extent as a reduction of the compensation allowed to the officer,— the effect of which is to require a corresponding addition to his salary. Public officers cannot and ought not to be expected to perform official services without reasonable compensation; and if not, then it is clear that the effect of such a tax is the same as it would be if levied upon the office instead of the officer, or the salary annexed to the office. According to the agreement of the parties, judgment must be entered for the plaintiff in the sum of $61.50.

[NOTE. On a writ of error sued out by the collector, this judgment was affirmed by the supreme court, Mr. Justice Bradley dissenting. The court, speaking through Mr. Justice Nelson, after explaining the relations between the state and federal governments, says: "Such being the separate and independent condition of the states in our complex system, as recognized by the constitution, and the existence of which is so indispensable, that, without them, the general government itself would disappear from the family of nations, it would seem to follow, as a reasonable if not a necessary consequence, that the means and instrumentalities employed for carrying on the operations of their governments for preserving their existence, and fulfilling the high and responsible duties assigned to them in the constitution, should be left free and unimpaired; should not be liable to be crippled, much less defeated, by the taxing power of another government, which power acknowledges no limits but the will of the legislative body imposing the tax; and more especially those means and instrumentalities which are the creation of their sovereign and reserved rights, one of which is the establishment of the judicial department, and the appointment of officers to administer their laws." Buffington v. Day, 11 Wall. (78 U. S.) 113.]