## Francis W. Fifield v. Marvin J. Close.

*Stamp Act: Process.* So much of the Internal Revenue Law as requires process in state courts to be stamped, as a condition of the validity of legal proceedings, is unconstitutional and void.

*Heard April 27th. Decided May 25th.*

Error to Oakland Circuit.

This was an action of trespass, commenced before a justice of the peace. There was no appearance on the return day, and judgment was rendered for plaintiff for one hundred dollars damages and costs.

The case was removed by certiorari to the Circuit Court, on the ground that the summons issued by the justice of the peace was void, because no United States revenue stamp was attached thereto.

The Circuit Court reversed the judgment of the said justice of the peace.

*M. E. Crofoot*, for plaintiff in error.

The act of Congress taxing the process of state courts, is void. — 2 *Pet.* 449, 467; 22 *Ind.* 276; *Law. Reg. Jan'y*, 1865, *p.* 157; 19 *Wis.* 369; 5 *Mich.* 368; 26 *Howard's Pr.* 119; 29 *Id.* 253, 357; 19 *Abb. Pr.* 121; 30 *Id.* 378.

*O. F. Wisner*, for defendant in error,

Cited 19 *Wis.* 380.

CAMPBELL J.

There is but one question raised in this case, and that is, whether the stamp tax on legal process in state courts is valid. The power of Congress to impose such a charge, as a condition upon litigation, is denied by the plaintiff in error, as inconsistent with the control which the Constitution of the United States guarantees to the state

15 Mich. — 2H.

authorities over all such matters as have been left by that instrument under local regulation. The question is one of much importance, inasmuch as it involves fundamental principles bearing upon the nature and attributes of both local and general governments.

In order to comprehend the full meaning of the inquiry, it will be well to consider how far this power of taxation may be carried, if it exists, and what consequences it will draw after it. For, while consequences can not alter the law, they may be of the utmost value in aiding us to discover what the law is, in reference to such constitutional questions as refer to the nature of our institutions, and the distribution of the various functions of government.

If this power exists, it is derivable from the specific power vested in Congress "To lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States." — *Art.* 1, § 8. It is very well settled that such a tax as is involved in this cause is not a *direct* tax, within the sense of the constitution, and, therefore, need not be distributed by the rule of population. — *Hylton v. United States*, 3 *Dall.* 171. The constitution imposes no limit on any but direct taxes, beyond the requirement that they "*shall be uniform throughout the United States.*" — *Art.* 1, § 8. There is, therefore, no limit upon the power of Congress (if it can levy these taxes at all), to select any objects within the taxing power, and draw from them any amount of uniform contributions which it may see fit to require. The power to tax any specific thing is unlimited, or it is entirely wanting. There are no bounds within which the discretionary action must be confined. The legislature levying the tax is the sole and ultimate judge of the expediency or necessity of requiring it, and of the extent to which it shall be charged upon any class of taxable articles. And where a legislature acts within the line of its constitutional powers, the motives of its action

FIFIELD v. CLOSE.

can never be judicially reviewed, nor can courts in any way determine the propriety of its enactments. Its expressed will disposes of all questions of reason or policy.

Having this unqualified discretionary power to tax to any extent whatever is taxable, that power may easily be extended far enough to destroy anything on which burdens may be imposed, by making those burdens so heavy as to become prohibitory. It is within the experience of most countries that duties may become prohibitory, and where taxes are chargeable specifically, so that particular objects may be taxed at pleasure, the same result may easily be reached by specific impositions upon domestic interests. The argument that such prohibitory action is improbable, has no force whatever in determining the existence or non-existence of the power. There is no legitimate power possessed by any legislature which it may not lawfully carry to an extreme, where extreme action is deemed expedient by the majority of the members. And where a power of destruction has been conferred, it is always possible that it may be exercised, although it may be very improbable. Where a constitution does not limit the action of such an assembly, it must be assumed that the people do not regard a right or institution as important enough to be removed from the control of their representatives. And when those representatives make up their minds that policy requires the abrogation of any system over which they have complete authority, they can not be held legally incompetent to abolish it. The principle that an unrestrained right to tax involves in law a right to destroy by taxation, has been recognized from the beginning by our courts. It is the foundation of all of those decisions which have been made by the Supreme Court of the United States, asserting the immunity from state interference of the United States government, and its various offices and instrumentalities. In some of the tax cases, the danger of destruction to the agencies of the

government was more than theoretical, and the design of the obnoxious legislation was to defeat the measures which Congress had determined on for the public interest. And, therefore, in holding that the general government, and its various agencies and machinery, are exempt from state taxation, the Supreme Court expressly rested their decisions upon the assumption that the power to tax involves the power to control and to destroy. — *McCulloch v. Maryland,* 4 *Wheat.* 316; *Osborn v. Bank of the United States,* 9 *Id.* 733; *Weston v. City Council of Charleston,* 2 *Peters,* 449; *People of New York v. Commissioners of Taxes,* 2 *Black,* 620; *Bank Tax Case,* 2 *Wallace,* 200; *Van Allen v. The Assessors,* 3 *Id.* 573; *Dobbins v. Commissioners of Erie County,* 16 *Pet.* 435. A similar principle has led to the protection from State interference of all privileges lawfully granted by the United States.— *Hays v. Pacific Mail Steamship Company,* 17 *How.* 596; *Gibbons v. Ogden,* 9 *Wheat.* 1; *Passenger Cases,* 7 *How.* 283; *Sinnott v. Davenport,* 22 *Id.* 227.

If Congress has the right to impose a duty or tax upon suits in courts of the states, it follows, as an inevitable conclusion, that such restrictions may be laid upon these proceedings as to put an end to the entire action of those courts, and, for all practical purposes, to produce the same results as if they were abolished. And the question we are called upon to decide is, therefore, whether Congress has power to put an end to the exercise of the judicial power of the states.

Presented in this form, the inquiry involves little short of absurdity. It is one of the cardinal principles of political science that no government can exist without a judicial system. It is the only peaceable means of enforcing private rights, and of protecting the community or the citizen from violence and fraud. A state without courts to enforce its own laws, is an impossibility. And if Congress can

destroy or control the State judiciary, it can utterly abrogate the state itself.

No one would contend that the system of government established by the constitution of the United States can possibly permit of any diminution by the general government of any of the functions which are left under state control. The judicial powers, like the other powers of the Union, are enumerated. They do not cover any considerable number of those subjects which concern the ordinary interests of the people. They punish no ordinary local crimes against the peace and good order of society, committed within the states, and they can entertain jurisdiction of no ordinary litigation between members of the same community. Congress can not enable the courts of the United States to entertain any except what — as compared with ordinary interests — must be regarded as exceptional cases. The great mass of common law rights and remedies, asserted by one citizen against his neighbor, are beyond their reach. Our whole system is based upon the principle that local affairs must be administered by state authority, unless where peculiar circumstances have led to the establishment of definite exceptions, resting on special reasons of public policy. The same supreme power which established the departments of the general government, determined that the local governments should also exist for their own purposes, and made it impossible to protect the people in their common interests without them. Each of these several agencies is confined to its own sphere, and all are strictly subordinate to the constitution which limits them, and independent of other agencies, except as thereby made dependent. There is nothing in the constitution which can be made to admit of any interference by Congress with the secure existence of any State authority within its lawful bounds. And any such interference by the indirect means of taxation, is quite as much beyond the power of the national legislature, as if the interference were direct and extreme.

We are not, therefore, at liberty to give weight either to the moderate amount of the tax, or to the solicitude manifested by Congress to exempt those cases more immediately concerning the state as a community. We are bound, of course, not to decide against the validity of any law, unless we are forced into a clear conviction of its conflicting with the constitution. But the uniform decisions of the United States Supreme Court against the validity of any taxes which would destroy those immunities which are secured by the constitution, seem to leave no room for doubt concerning the case before us. The courts of Indiana and Wisconsin have arrived at the same result. — *Warren v. Paul*, 22 *Ind.* 276; *Jones v. Keep*, 19 *Wis.* 369. The interference is not remote, but direct, and prevents any action whatever by the courts of justice in private suits, until the tax is paid. It makes this payment a condition of jurisdiction.

The stamp could not lawfully be required, and the decision of the court below, dismissing the case, and annulling the judgment for want of it, was erroneous, and should be reversed, with costs.

CHRISTIANCY J. and COOLEY J. concurred.

MARTIN Ch. J. concurred in the result.