BATHKE *v.* CITY OF TRAVERSE CITY.

1. NEW TRIAL—JURY—PREJUDICE.

   Upon each new trial the case must be tried just as if it never had been tried before as it is a rehearing of the cause before another jury with as little prejudice to either party as if not heard before.

2. SAME—INTERPOSITION OF NEW DEFENSES.

   Upon new trial of action against city for injuries sustained as result of collision between car in which plaintiffs were riding and city truck, interposition of defense of governmental immunity was not precluded by the fact that at first trial it was conceded that the city was acting in a proprietary capacity.

3. APPEAL AND ERROR—INTERPOSITION OF DEFENSE OF GOVERNMENTAL IMMUNITY.

   The defense of governmental immunity may be interposed on appeal in the Supreme Court under some circumstances. .

4. AUTOMOBILES — REPAIRS — MUNICIPAL CORPORATIONS — GOVERNMENTAL IMMUNITY.

   City light department which used a truck in a proprietary capacity had the duty to use reasonable care in properly maintaining its brakes and steering apparatus as much as to use due and reasonable care in its operation on the highway, hence would not be relieved of liability on theory of governmental immunity merely because a city-owned garage kept the vehicle in repair.

5. SAME—MUNICIPAL CORPORATIONS—NEGLIGENCE—MAINTENANCE—OPERATION—EVIDENCE.

   In actions by two women for injuries sustained in collision between their car and truck owned and operated by city light department in a proprietary capacity, evidence presented an

---

* Continued from Vol. 307.

issue of fact for the jury as to negligence of defendant who is claimed to have failed to inspect and maintain the truck properly and also to have failed to have it under control and not to have operated it at a reasonable speed in view of its condition.

6. Damages—Married Women—Assignments from Husbands—Loss of Services as Housewives.

In actions by married women for damages arising from automobile collision, in which plaintiffs also claimed damages as assignees of their husbands, it was not error to receive in evidence the assignments which included claims for loss of services as well as past and future expenses for hospital, medical and surgical care where instructions, proof of specific items claimed under the assignments, and presentation of claims in argument to jury did not include the claims for loss of their services as housewives.

7. Same—Past and Future Loss of Earnings.

Past and future loss of earnings of married women who were prevented from pursuing employment in which they had been engaged prior to automobile accident were proper elements of damages in their actions arising from the collision.

8. Appeal and Error—Personal Injury Case—Insurance.

Claimed error that element of insurance was injected into trial because a person not representing plaintiff or her husband and not shown to be connected with an insurance company several times sought a statement from her while she was in a hospital following automobile accident and that someone else, not shown before the jury to be identified with an insurance company, was permitted inside the rail of the courtroom *held*, without merit.

9. Trial—Charge of Court Considered in Its Entirety.

The charge of a court to a jury must be considered in its entirety, and error will not lie upon detached sentences which, when construed with the rest of the charge, are not objectionable.

10. Same—Instructions—Harmless Error.

The giving of the concluding part of sentence in an instruction to jury in action arising from automobile collision, which part might well have been omitted since it held defendant's driver to a higher standard of care than law demands, did not constitute reversible error where it appears to have been inadvertent and did not affect the result and was harmless error when considered with other parts of the charge, which appears

to have been satisfactory to counsel for both parties as all requests to charge were given and no objections stated as case was submitted to jury.

11. DAMAGES—MARRIED WOMAN—PERMANENT INJURIES—LOSS OF EARNINGS—BILLS.

Verdict of $15,000 for 29-year-old married woman who sustained serious, painful and permanent injuries which will cause her to continue to suffer pain during the rest of her life and to make it difficult for her to walk and who also is shown to have suffered a permanent loss of earning capacity *held,* not excessive, where it appears she was theretofore earning $16 a week in a garment factory, was previously in good health, had an expectancy of 40 years, suffered a broken ankle, was hospitalized for over two months with a limb in a cast from foot to hip for 6 or 7 weeks, and had hospital, doctor and other bills in sum of $875.20.

12. SAME—MARRIED WOMAN—LOSS OF EARNINGS—BILLS.

Verdict of $3,500 for 23-year-old married woman, a high school graduate who had been earning $16 a week in a garment factory and whose face was disfigured and was otherwise injured, and who was still suffering pain at time of trial and had hospital, doctor and other bills totalling $171.75, *held,* not excessive in action arising from automobile accident.

Appeal from Grand Traverse; Gilbert (Parm C.), J. Submitted January 4, 1944. (Docket No. 4, Calendar No. 42,521.) Decided February 24, 1944.

Separate actions of case by Katherine M. Bathke and Helen Bathke against City of Traverse City for personal injuries sustained in an automobile accident. Cases tried together. Verdicts and judgments for plaintiffs. Defendant appeals. Affirmed.

*Robert B. Murchie,* for plaintiff.

*Charles H. Menmuir (Julien Winterhalter,* of counsel), for defendant.

BOYLES, J. Plaintiff Katherine Bathke brought suit against the city of Traverse City for damages

resulting from a collision between an automobile which she was driving on a street in Traverse City and a Ford pickup truck owned by the defendant, operated by defendant's employee; also claimed damages by reason of an assignment to her from her husband of his claim against defendant for the expense of hospital and medical care for his wife, and for his loss of her services as a result of her injuries. Plaintiff Helen Bathke, a sister-in-law of Katherine Bathke, who was riding with Katherine at the time of the accident, also brought suit against the city for damages resulting from the accident, and likewise for damages by reason of a similar assignment from her husband for his damages. The two cases were consolidated for trial before a jury. Separate verdicts of $15,000 for Katherine Bathke and $3,500 for Helen Bathke were rendered. Defendant's motions for new trial were denied and judgments entered on the verdicts, from which defendant appeals. The cases are consolidated on this appeal, the same questions being involved in each.

The city claimed governmental immunity as a defense to the suits; and also claimed that the assignments from the husbands were in effect assignments of rights of action which were personal to them, claims for personal services which would not survive and, therefore, not assignable. The trial court ruled otherwise, and defendant now urges the same questions as grounds for reversal.

Governmental immunity. These consolidated cases were tried twice. During the first trial the defendant did not claim governmental immunity—it was conceded during the first trial that the city was acting in a proprietary capacity in the maintenance and operation of the pickup truck. At the second trial the defendant claimed governmental immunity as a defense. Plaintiffs now argue that

the defendant is bound by the position taken by it on the first trial and cannot claim governmental immunity as a defense. There is no merit in the argument.

"Upon each new trial the case must be tried just as if it never had been tried before." *Donahue* v. *Klassner,* 22 Mich. 252.

"A new trial is a rehearing of the cause before another jury, but with as little prejudice to either party as if it had never been heard before. 3 Stephen's Commentaries, 626." *Gott* v. *Judge of Superior Court of Detroit,* 42 Mich. 625.

See, also, *Shippy* v. *Village of Au Sable,* 85 Mich. 280; *Kruk* v. *Railway Co.,* 249 Mich. 685.

Under some circumstances, the defense of governmental immunity may be interposed in this court on appeal. *Morris* v. *Radley,* 306 Mich. 689.

Defendant claims that the trial court should

"have granted defendant's motion for a directed verdict made upon the ground that the only liability claimed by the plaintiffs was that the defendant city failed to properly maintain and service the steering gear and brakes of its motor vehicle, and the proofs showed that the maintenance and repair of city vehicles and equipment was performed by the street department which performed only a governmental function, and therefore the city was immune from liability."

Plaintiffs claim:

"The facts do not support the defense of municipal immunity,"

and that

"The question of municipal immunity is not controlling in any event, because the trial court would have been justified in directing a verdict against

the defendant because of acts of negligence occurring outside of the claimed municipal immunity."

On April 1, 1942, the plaintiff Katherine Bathke was driving a Ford sedan in a northerly direction on the right-hand or easterly side of Woodmere avenue in the city of Traverse City. Woodmere avenue at the scene where the accident occurred is a gravel road 20 to 24 feet in width, rough and "washboardy," with some loose gravel on the street, and a ridge of gravel in the center. Katherine Bathke was accompanied by her sister-in-law, Helen Bathke, the other plaintiff, who was riding in the front seat with her. The plaintiff Katherine Bathke was driving at approximately 25 to 30 miles an hour. A Ford pickup truck, owned by the defendant city of Traverse City and used by the municipal light department in a proprietary capacity, was being driven in a southerly direction on Woodmere avenue at a speed of 30 miles or more per hour by one Gard Tharp, an employee of the light department, who was driving out to the private home of a customer of the light department to turn on the lights. The defendant's truck was an old Ford pickup, purchased by the defendant city in 1937; prior to that time it had been owned by Michigan Bell Telephone Company, and it was of unknown vintage. The equipment repairman in the defendant city's garage testified that the truck was in a worn-out condition. The brakes on the truck were in poor condition. Gard Tharp, the employee of the defendant city's light department who was driving the truck at the time of the accident, testified:

"Q. Tell me, now, whether the brakes on that truck on the day you drove it were good or poor?
"A. I would say they were poor."

He testified that within two or three weeks or a month before the accident he had reported the condition of the brakes to his foreman and that the defendant city's garage had worked on them. He further testified:

"*Q.* After they worked on them, they still were not in good condition, were they?
"*A.* No."

Another employee of defendant's light department, who drove the truck part of each day, testified that previous to the accident while he drove the truck he found the brakes to be bad. That he also had reported them to the foreman about a month before the accident. That the truck was taken into the garage for work on the brakes but after it came out the brakes were still not very good. He testified:

"*Q.* How did you drive the car—were you able to drive that or did you drive it as fast as you would an ordinary car, on the road?
"*A.* No, sir.
"*Q.* Why not?
"*A.* We were afraid to.
"*Q.* Could you make a quick or reasonable or average stop in any distance with that truck that you could with an ordinary car or truck?
"*A.* No, sir.
"*Q.* When you had stops to make, how did you make stops?
"*A.* Well, we hardly ever drove it more than 20 miles an hour, and then we took time enough to stop it in time to make a stop-light, if we could.
"*Q.* With the brakes in the condition they were in?
"*A.* With the brakes in the condition they were in.

*"Q.* In other words, when you had to make a stop, and you could foresee it, driving that truck, you would start slowing up in advance so the car would sort of brake itself?

*"A.* Yes, sir.

*"Q.* Was that the condition of the brakes on the day of this accident?

*"A.* To my knowledge, it was."

Tharp also testified that he was afraid to drive the truck fast because of the brakes. He testified:

*"Q.* So, you didn't have to apply the brakes there, because the ramp would slow you down? As a matter of fact, you have to drive that truck slow, because you didn't dare to take a chance on the brakes; isn't that right?

*"A.* That is right."

Tharp, the driver of the defendant's truck, testified that when he was between 30 and 50 feet from the plaintiffs' car, without warning something went wrong and his truck started toward the wrong side of the road, that he turned his steering wheel, the truck continued to go toward the east and struck plaintiffs' car. He did not apply the brakes and the truck was going at approximately the same speed at the time of the impact as it was when it left its right-hand side of the road. Plaintiff Katherine Bathke testified that when she saw the city truck coming over to her side of the road about 150 feet away she drove over to the right-hand side of the road, slowed down and almost stopped, against a sand bank at the side of the road. There was testimony that when defendant's truck started to come over onto the wrong side of the road it was about 150 feet distant from plaintiff's car. After defendant's pickup truck started across the road plaintiff had slowed down from 20 or 25 miles an hour to 3 or 4 miles an hour, before her car was struck.

There was much testimony that certain parts of the steering apparatus of defendant's truck were worn out and not properly maintained. The pitman arm and the drag link, connecting the steering post to the wheel of the truck, were in evidence. The defense was that the truck was maintained by the city garage operated by the city street department, a governmental agency of the city, and that therefore the city was immune from liability for negligence in the maintenance of the truck. However, it was established that the truck was operated by the city light department in a proprietary capacity and there was much testimony tending to prove negligence in the operation of the truck. It was the duty of the light department to use reasonable care to see that the brakes as well as the steering apparatus of the truck were properly maintained, as much as it was its duty to use due and reasonable care in the operation of the truck on the highway. Had the light department employed a private garage to grease, inspect and maintain the truck it could hardly be said that the city would be immune from liability in the operation of the truck in a proprietary capacity because the garage repairman was guilty of negligence in the inspection and maintenance of it. Plaintiffs claimed that the city was guilty of negligence, not only in failing properly to inspect and maintain the truck in proper condition for use on the highway, but also in failing to operate the truck in a reasonable and proper manner, to have the truck under control, and to refrain from operating it on the highway at an unreasonable and excessive rate of speed in view of its condition. There was sufficient evidence of negligence to raise an issue of fact for the jury. The issue as to whether the verdicts are against the great weight of the evidence has not been raised in this court.

We next consider defendant's claim that the court erred in allowing the assignments to be considered as an element of damages. The assignments by each husband to his wife were the same, the one from Katherine's husband being as follows:

"Know all men by these presents, that I, the undersigned Heber C. Bathke, for and in consideration of one dollar and other valuable considerations, to me in hand paid by my wife, Katherine M. Bathke, the receipt of which is hereby acknowledged, do hereby assign, transfer, and set over unto the said Katherine M. Bathke all of my right, title, and interest in and to a claim for damages against the city of Traverse City as set forth in the attached 'claim for damages,' and I do hereby give the said Katherine M. Bathke full power and authority, for her own use and benefit, to ask, demand, collect, receive, compound, and receipt or give acquittance for said claim or any part thereof, and in her own name or otherwise, to bring, prosecute, and withdraw any suits and proceedings at law or in equity therefor."

The *claims for damages* referred to in the assignments as filed with and against the city by each husband were also substantially identical, except that Katherine's husband claimed that "she will be unable hereafter to pursue her duties as a housewife," and Helen's husband claimed that she "has been unable to pursue her duties as a housewife." The claim as assigned to Helen concluded:

"That as a result of said accident the undersigned claims damages for the hospital, medical and surgical care and treatment of his wife both past and future, for the loss of her services as a result of said injuries, in the sum of $5,000."

The claim for Katherine was substantially the same, except the amount claimed was $10,000.

Defendant's claim of error because these assignments were included as a part of plaintiffs' cases is stated as follows:

"Did the court err in permitting the plaintiffs to introduce in evidence assignments to plaintiffs of their husbands' claims for loss of services because a right of action for loss of services is a personal right, and not assignable, and further because it allowed the splitting of a cause of action?"

As argued in defendant's brief, the substance of this claim of error goes further than a mere question of admissibility of evidence. As a result of admitting the assignments in evidence and receiving testimony as to the damages claimed by plaintiffs under these assignments, the court submitted to the jury certain elements of damages claimed to have been covered by the assignments. During the trial, in the course of plaintiff's testimony to prove damages, defendant objected to receiving the assignments in evidence on the ground that these assignments were attempts to assign claims for loss of services, which were not assignable. Counsel for plaintiffs thereupon stated his claim to the court (in the presence of the jury):

"We claim, if the court please, that there would arise to him a right of action for all the expenses of the hospital, medical, and doctors; there would be a loss of services of the wife in connection with such of the household duties as she would have performed had it not been for the injuries."

The court received the assignments in evidence, ruling as follows:

"You may have it in evidence, but I will say this: The services that may be claimed under this assignment must be solely the household services. It can-

not be services of the wife working out somewhere,'' and counsel for plaintiffs conceded:

"That is right. That is for the wife to recover herself."

Later, after some discussion between the court and counsel, plaintiffs' attorney stated in open court the specific items claimed under each assignment, as follows:

"In the case of Katherine Bathke, in the assignment of claims from her husband to her, we claim the assignment covers these items, concerning which proof was offered: Dr. Brownson, $150; Munson Hospital, $295.20; X-ray in Detroit, $10; 25 treatments in Detroit at $2 each, $50; board at the plaintiff's mother's home, five weeks at $10, $50; insurance, deductible, $25; laundry, 28 weeks at $2.50, $70. And the future expense, the probable future expense of removing the nail from the ankle, if the jury is satisfied under the evidence that at some later time it will have to be removed, of $225—or whatever the jury believes would be adequate. Those are the only items that we claim now are covered by the assignment from Heber Bathke. I cannot recall—I don't now know of any others that might be necessary in the future, unless the jury might find there would be some additional medical expense. * * *

"Now, in the case of Helen Bathke, the items we claim are covered by the assignment are: The statement from Dr. Lemen, $24; Munson Hospital, $57.75; X-rays in Traverse City, $10; Dr. Manting, $5; daughter's board, two weeks at $5, $10; Mrs. Bathke's board for one week, $10; one coat, $35; Dr. Pinchert in Dearborn, 10 calls at $2, $20. Those are the only items that we now claim are covered by that assignment."

This testimony was received without further objection. Plaintiffs had eliminated from the claims

assigned by the husbands any claim or proof of loss of the services of their respective wives. The total amount thus claimed for Katherine Bathke under her husband's assignment was $875.20, and the total similarly claimed for Helen Bathke was $171.75. Under the course thus charted by counsel for plaintiffs in presenting proofs of damages, and as allowed by the court, there is no merit in defendant's argument that the court erred in receiving evidence of damages for the husbands' loss of services of their respective wives. The court did not receive such evidence, and that is a complete answer to the argument. Plaintiffs' counsel, in presenting their claims to the jury in his argument, correctly itemized the amount of their respective claims, in accordance with the proofs, and further argued that plaintiffs were entitled in their own right to certain amounts for loss of *their own earnings* during the time they were prevented from working as a result of their injuries. Each had been working at a garment factory and receiving $16 per week. It was claimed that each was entitled to damages for loss of earnings, covering the time they were incapacitated. There was proof that Katherine Bathke was permanently injured, that she would never be able to work again, and that it would be some time before Helen Bathke would be able to resume work. Damages were claimed on behalf of both plaintiffs for future loss of earning capacity. Defendant does not attempt to argue that plaintiffs could not include as an element of their damages their loss of earnings during incapacity, and their loss of future earning capacity. Such earnings would be their own, not merely a part of their husbands' claims for loss of services. The court, in submitting the question of damages to the jury, properly charged that plaintiffs could recover for the amounts their respective

husbands had expended or incurred liability for, or might be compelled to expend, on account of plaintiffs' injuries. Under these circumstances, we find no error in admitting the assignments in evidence and allowing consideration of damages within the ruling of the court.

Defendant claims the court erred in denying its motion for new trial on the ground that the element of insurance was injected into the trial. We have examined the record. The only possible showing of any connection with insurance is that an attorney, not representing plaintiff Katherine Bathke or her husband and not shown to be connected with an insurance company, called on her several times while she was in the hospital, asking for a statement; and that someone else, not shown before the jury to be identified with any insurance company, was allowed by a court officer to sit for a time inside the rail of the courtroom. If there were any merit in this claim of error, the court should require attorneys and others present during a trial to wear badges or otherwise identify themselves if they were connected with an insurance company. There is no merit in this claim of error. See *White* v. *Makela,* 304 Mich. 425.

Defendant claims error in the court's charge to the jury because the court in the course of instructing the jury said:

"And it is the duty and obligation of every driver to avoid, so far as possible, endangering the life or limb of other persons, as well as their property."

Standing alone, without any other instruction on the subject, this would constitute reversible error. It would hold the defendant to a higher degree of care than the law demands. *Pearl* v. *Detroit United Railway,* 188 Mich. 84; *Simmons* v. *Petersen,* 207

Mich. 508. But a charge must be considered in its
entirety, and error will not lie on a detached part
of a sentence where the whole charge fairly submits
the issues and states the law. *Freeman* v. *Hoag,* 217
Mich. 587; *Finkel* v. *Otto Misch Co.,* 291 Mich. 630.
The entire sentence in the court's charge, from,
which appellant's quotation is gleaned as ground for
reversal, was:

"I shall make this suggestion: It is a provision
of the law of this State that every person driving a
vehicle on the highway shall drive the same at a
careful and prudent speed, not greater nor less than
is reasonable and proper, having due regard for the
traffic, surface and width of the highway, and of
any other condition then existing; and it is the duty
and obligation of every driver to avoid, so far as
possible, endangering the life or limb of other per-
sons, as well as their property."

The concluding part of this sentence might well
have been omitted, but it did not affect the result
and we hold this inadvertent statement to be harm-
less error when considered with other parts of the
charge.

The gist of plaintiffs' claim of negligence on the
part of the defendant city was that the defendant
failed to properly inspect, and to maintain, the steer-
ing apparatus of its truck in safe condition, that the
truck was not properly equipped with brakes, that
in its known condition it was carelessly driven at an
excessive and unsafe rate of speed on a rough "wash-
board" road without knowing or heeding the dis-
tance it would take to stop the truck. The court's
charge was complete, fair and accurate on the essen-
tial elements of the case. The elements to be con-
sidered by the jury in computing damages, if the
jury reached that phase of the case, were carefully
and properly explained. Each of the requests to

charge submitted by both the plaintiffs and the defendant was given by the court. The duty of the defendant and its employees was fully and completely and correctly given. The terms negligence, contributory negligence, proximate cause, burden of proof, and all of the other elements were carefully defined. The law in reference to unavoidable accidents was emphasized by repetition at the request of the defendant. So, also, was the law in reference to sudden emergencies and the care required. At the conclusion of the charge, the court asked counsel for both parties whether there was anything else they could think of. No further suggestions were made, no objections stated.

There is no occasion to find error by selecting isolated sentences from the charge. As a whole, it accurately and fairly submitted the issues of fact to the jury. We fail to find any reversible error on account of the charge.

The verdicts were in a considerable amount— $15,000 in the case of Katherine Bathke and $3,500 for Helen Bathke. The proofs showed that Katherine Bathke had sustained serious, painful and permanent injuries, that she will continue to suffer pain during the rest of her life as a result of the injuries, will always have difficulty in walking, may ultimately require aid to get around. In addition, there was proof of permanent loss of earning capacity. She was 29 years of age, with an expectancy of approximately 40 years, previously in good health, suffered a broken ankle, was hospitalized for more than two months with a limb in a cast from foot to hip for 6 or 7 weeks. The verdict was well within the range of the testimony as to actual damages, permanent injury, pain and suffering, and loss of earning capacity. We do not substitute our opinion for that of the jury, especially where permanent injuries and pain and suffering are an important

element of the damages. In the case of Helen Bathke, the proofs show she was 23 years of age, a high school graduate, her face was disfigured by the accident, she was still suffering pain, was otherwise injured. We do not hesitate in holding that the verdicts were not excessive. The trial court was not in error in denying defendant's motion for new trial on that ground.

Judgments affirmed.

NORTH, C. J., and STARR, WIEST, BUTZEL, BUSHNELL, SHARPE, and REID, JJ., concurred.